# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ROBERT FROST,                    Case No.: 1:09-cv-662

    Plaintiff,                     Dlott, J.
                                         Bowman, M.J.

v.

H.C.A. STALNAKER, et al.,

    Defendant

## REPORT AND RECOMMENDATION

Plaintiff, Robert Frost, has filed a *pro se* prisoner 42 U.S.C. § 1983 complaint against defendants HCA Stalnaker, RN Treadway, RN Barr, Lieutenant Eshhum, Major Warren, Dr. Owen, and Dr. Bautista,[1] alleging violations of his constitutional rights under the First, Fourth, and Eighth Amendments during his incarceration at the Southern Ohio Correctional Facility ("SOCF") in Lucasville, Ohio. Plaintiff specifically complains that he was denied adequate medical care following shoulder surgery, which denial of care resulted in an infection of the surgical site. (Doc. 3).

Pursuant to local practice, Defendants' Motion for Summary Judgment (Doc. 53) and Supplemental Memorandum (Doc. 54) have been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. 28 U.S.C. §636(b). For the reasons stated herein, I recommend that Defendants' motion be granted, and that

---

[1] Plaintiff's motion to amend his complaint to add Dr. Morford was granted on June 10, 2010, but Plaintiff failed to file his amended complaint within the time permitted by the court (Doc. 28). Therefore, Dr. Morford was never added as a party defendant. Plaintiff's second motion to amend to add a prayer for monetary relief in the amount of 5 million dollars was denied (Doc. 30), as was his motion for reconsideration. (Doc. 45).

Plaintiff's claims be dismissed with prejudice. I further recommend that Plaintiff's third motion to amend his complaint (Doc. 57) be denied.

## I. Factual Background

Plaintiff remains incarcerated at the Southern Ohio Correctional Facility. The named defendants include both medical and non-medical staff at SOCF, all of whom are alleged by Plaintiff to have exhibited deliberate indifference to Plaintiff's serious medical needs. Plaintiff claims that medical staff failed to place him in the infirmary at SOCF immediately following his surgery, as required by institutional policy, and that other institutional staff members were complicit in the violations of his rights by medical staff. According to Plaintiff, Defendants' failure to properly observe him and/or place him in the infirmary caused an infection of Plaintiff's sutures. In addition, Plaintiff contends that Dr. Owen and Dr. Bautista failed to sign a post-surgical order requiring Plaintiff to be cuffed in front of his body, which inaction led to Plaintiff being subjected to cruel and unusual punishment when he was cuffed from behind.

Plaintiff's medical records are attached as exhibits to Defendants' motion for summary judgment.[2] Those records reflect that Plaintiff was transported from SOCF to the Corrections Medical Center ("CMC") on October 10, 2008 in preparation for surgery. (Doc. 53 at 23). On October 14, 2008, Plaintiff underwent shoulder surgery on his left shoulder at the Ohio State University Medical Center. He was transported back to CMC following surgery and held at CMC the following day (October 15) for post-surgical observation. *Id.*

---

[2]Though referenced as Exhibits A through C, the Exhibits technically were appended in the electronic record as additional pages to Defendants' motion, not exhibits. For the convenience of this court, they will be referenced by their location in the electronic record.

at 24. On October 15, he was sent to physical therapy. *Id.* at 25. On October 16, he was transported from CMC back to SOCF. *Id.* He was seen for follow-up by Dr. Bautista and Nurse Treadway on October 17, 2008, and his previously prescribed medications were refilled. He was additionally prescribed Neurontin and Ultram (for a ten day period) for post-surgical pain. *Id.* at 26.

On October 21, 2008, Plaintiff was seen by Nurse Garner after being cuffed from behind. She noted that Plaintiff's sutures were healing well and that there was no sign of infection. However, her note reflects that Dr. Owen requested a temporary cuff in front order, presumably to minimize any post-surgical discomfort. *Id.* at 33.

On October 22, 2008, Plaintiff was seen for a follow-up appointment, and his Neurontin prescription was written to decrease weekly until discontinued at the end of three weeks. On October 27, Plaintiff's sutures were removed. Medical notes made by the attending nurse reflect that Plaintiff had no sign of infection, no active bleeding, and only slight redness. He was instructed to return for treatment should any signs of infection appear. *Id.* at 33.

On December 12, 2008, Plaintiff was prescribed Ultram for an additional fourteen day period based upon his complaints of pain. Plaintiff was treated with Tylenol between January 23, 2009 and March 3, 2009. *Id.* at 28-29. On March 19, 2009, an MRI was ordered for Plaintiff's right shoulder and he was placed back on Neurontin, but notes reflect that staff were advised to monitor him closely for crushing and/or hoarding. *Id.* at 30.

On September 9, 2009, Plaintiff filed this federal lawsuit.

**II. Analysis**

3

### A. Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis

added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.  *Id.* at 251-52.

Although reasonable inferences  must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, inferences are not to be drawn out of thin air.  Rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244-45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).   To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"*Matsushita,* 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

In this case, Plaintiff has failed to present anything more than his own conclusory allegations in support of his claims.  Because Plaintiff's allegations are flatly contradicted by the medical records filed by the Defendants, his allegations standing alone are insufficient to demonstrate a genuine issue for trial.  And although Plaintiff has attached to his response memorandum some additional records, such as copies of his administrative grievances,  none of those records remotely call into doubt the accuracy of the medical records.

Rather than presenting any evidence, Plaintiff merely disputes the accuracy of the medical records through additional unsupported allegations. By way of example, he alleges that records showing that he was prescribed Tylenol cannot be accurate because Tylenol "contains codeine" and Plaintiff's records reflect that he is allergic to codeine.

5

Plaintiff's argument is nonsensical. The medical records filed by Defendants do reflect a codeine allergy, but the same records also reflect that regular Tylenol - and not Tylenol with codeine - was prescribed.

The chief factual allegations in Plaintiff's complaint are similarly refuted by the medical records; an incontrovertible fact for which Plaintiff has no credible response. For example, Plaintiff alleges that he was not properly observed following his surgery, but records reflect that he was held at CMC for two days for post-surgical observation. (Doc. 52 at pp. 24-26). Although Plaintiff alleges that medical inattention led to an infection of the suture site, records demonstrate that Plaintiff's sutures were removed on October 27, 2008 and that there was no infection. (*Id.* at 33). In terms of Plaintiff's allegations regarding the lack of a "front cuff" order, records reflect that Dr. Owen specifically requested that order. (*Id.*).

In short, the court has construed all relevant facts in favor of the plaintiff *where a genuine dispute exists*, but finds no material facts to be in dispute. Defendants' arguments are well-supported; therefore, for the reasons more thoroughly set forth below, Defendants are entitled to judgment as a matter of law.

**B. Eleventh Amendment Immunity**

To the extent that Plaintiff seeks monetary damages against Defendants in their official capacities, Defendants are entitled to judgment as a matter of law because Plaintiff's claims are barred by the doctrine of sovereign immunity under the Eleventh Amendment. *See generally Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). SOCF is a facility within the Ohio Department of Rehabilitation and Corrections, which is an instrumentality of the state of Ohio to which Eleventh Amendment immunity attaches. *Hafford v. Seidner*, 183

F.3d 506, 512 (6th Cir. 1999). A suit brought against a state official in his or her official capacity is effectively a suit against the official's office, equivalent to a suit against the state itself. *Wolfel v. Moris*, 972 F.2d 712, 718-719 (6th Cir. 1992).

### C. Burden of Proof for Eighth Amendment Claim

In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under the color of state law. *Burnett v. Grattan*, 468 U.S. 42, 45 n.3, 104 S. Ct. 2924 (1984). The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. Amend. VIII. In *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'...proscribed by the Eighth Amendment." *Id.* at 104 (citation omitted).

A claim of deliberate indifference under the Eighth Amendment contains both an objective and a subjective component. Plaintiff first must prove that the alleged deprivation of medical care is "objectively, sufficiently serious," such that he was denied "the minimal civilized measure of life's necessities." *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). The failure to provide care or the delay in care must have exposed Plaintiff to a "substantial risk of serious harm." *Id.* at 828. To prove the subjective element of his claim, Plaintiff must additionally show that the prison officials actually knew of and disregarded "an excessive risk to inmate health or safety. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837. The subjective component exists "to prevent the constitutionalization of medical malpractice

claims." *Cornstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Thus, in order to prove his claim, Plaintiff must show that each Defendant was aware of facts from which he or she could draw the inference that a substantial risk of serious harm existed, and that he or she actually drew that inference. *Id.* Plaintiff must prove the elements of his claim by a preponderance of the evidence. *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994).

Plaintiff's complaint presents allegations against multiple SOCF employees, all relating to his post-surgical treatment. For example, Plaintiff alleges that Nurses Treadman and Barr refused "to follow procedure" by placing him in the infirmary at SOCF upon his return to that facility post-surgery. (Doc. 3 ¶ 9). He alleges that he contacted defendant Stalnaker to complain, but that Stalnaker took no action to "make sure Plaintiff Frost Medical Care wasn't inappropriate." (Doc. 3 ¶ 10). Likewise, he alleges that defendant Eshum violated Plaintiff's rights when he "[refused] to let medical know [that] not putting Plaintiff Frost in the infirmary after his surgery was wrong." (Doc. 3 ¶ 11). Defendant Major Warren is accused of doing "nothing to make sure the medical staff was disciplined" after they failed to place Plaintiff in the infirmary. (Doc. 3 ¶ 12).

Plaintiff accuses Drs. Owen and Bautista of exhibiting deliberate indifference by failing to put on a "front cuff order" immediately following Plaintiff's surgery. (Doc. 3 ¶ 13). The same defendants are accused of neglecting Plaintiff's incision, leading to infection, and Dr. Owen is accused of improperly weaning Plaintiff from his pain medication.

### D. Qualified Immunity

In addition to Eleventh Amendment immunity for Plaintiff's claims against them in their official capacities, the Defendants are entitled to summary judgment for claims brought against them in their individual capacities based on the separate doctrine of qualified

immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The purpose of qualified immunity is to provide governmental officials with the ability "reasonably to anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton*, 483 U.S. 635, 646, 107 S. Ct. 3034, 3042 (1987) (internal quotation omitted). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his or her actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, ___U.S. ___, 129 S.Ct. 808 (2009).

When a defendant moves for summary judgment based on qualified immunity, the official must first show that he/she acted within discretionary authority. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once an official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in that position would have understood it was unreasonable to engage in the conduct that violated the right. *Id*. In this case, the plaintiff has made no claim that Defendants were acting outside their authority as SOCF officials, so the burden falls on Plaintiff to overcome the qualified immunity defense.

Plaintiff has failed to carry this burden because his complaints fail to allege a violation of any constitutionally protected right. Plaintiff simply cannot establish either the objective or the subjective components of an Eighth Amendment claim on the record presented.

### 1.  Failure to Satisfy Objective Component of Eighth Amendment Claim

Plaintiff's primary complaint - that he was not placed in the infirmary upon his return to SOCF two days after his surgery - does not allege a violation of a clearly established constitutional right.  "It is well settled that the decision where to house inmates is at the core of prisoner administrators' expertise."  *McKune v. Lile,* 536 U.S. 24, 39, 122 S. Ct. 2017, 2027 (2002).  Therefore, a failure to place an inmate in the prison infirmary cannot be challenged as a constitutional violation.  *See e.g., Sandin v. Conner*, 515 U.S. 472, 487, 115 S.Ct. 2293, 2302 (1996)(placement in segregated confinement did not implicate liberty interest); *Marasco v. Procunier*, 26 F.3d 131 (Table, 9th Cir. June 7, 1994)(allegations that inmate was required to be housed in infirmary insufficient to support claim of deliberate indifference).

Along the same line, Plaintiff's complaint that prison staff failed to comply with "policy" that he be placed in the infirmary does not state a constitutional claim.  It should be noted that the existence of the policy remains in dispute, as Defendants deny its existence.  This factual dispute is immaterial, however, because Plaintiff has failed to show that any harm resulted, much less that the alleged violation of policy rose to the level of a violation of the Eighth Amendment.  Whether negligent or deliberate, a violation of an internal prison policy, in and of itself, does not equate to a violation of a constitutional right.  *See e.g., Huron Valley Hospital, Inc. v. Pontiac*, 887 F.2d 710 (6th Cir. 1989), *cert. denied*, 479 U.S. 885 (1986).

Plaintiff's complaint  that his pain medication was terminated too quickly also fails to state a violation of a clearly established constitutional right.   The issue of medication choice is unmistakably an issue of medical judgment, which fails to rise to the level of a

constitutional violation. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)(differences in judgment between an inmate and prison medical personnel regarding appropriate medical treatment are not enough to state a deliberate indifference claim); *Wolfel v. Farley-Morford*, 2009 WL 4547561 (S.D. Ohio December 1, 2009)(discontinuation of pain medication does not state a claim). There is no constitutional right to receive unlimited pain medication for an indefinite period of time. *Id.; see also Jones v. Ehlert*, 704 F. Supp. 885, 888-890 (E.D. Wis. 1989)(no deliberate indifference found where prisoner's Valium was discontinued after prisoner accused of palming medication).

Last, Plaintiff's allegation that a "cuff in front" order was not written quickly enough post-surgery fails to state a violation of a clearly established constitutional right. The records filed by Defendants reflect that a "cuff in front" order was recommended not later than one week post-surgery. The fact that the order either was not followed, or was not written quickly enough to prevent one incident of cuffing Plaintiff behind his back, does not rise to the level of a constitutional violation. At most, the incident reflects simple negligence which does not violate the Eighth Amendment. Where an inmate has received medical attention, and merely disputes the adequacy of that treatment and/or medical judgments, federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Westlake*, 537 F.2d at 860, n.5.

Plaintiff has failed to show that any of his medical treatment was objectively unreasonable under the circumstances presented. This is not a case in which treatment was denied or delayed for days for an obviously serious medical condition. Plaintiff's sole complaint of objective "harm" - an infection to his sutures - has been flatly refuted by the medical records presented. Courts reviewing far more serious allegations of medical

negligence have found no violation of the Eighth Amendment when no serious harm resulted. *Compare Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (no evidence that harm resulted from missed dialysis treatment); *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004)(delay in medical attention for more than two days in face of obvious appendicitis did not require verification of resulting harm); *see also Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005)(lack of evidence that delay for nearly 8 hours in obtaining treatment for heart attack had had detrimental effect precluded finding of objectively serious deprivation of medical care).

### 2. Failure to Satisfy Subjective Component of Claim

Each of the individual defendants is also entitled to qualified immunity because Plaintiff's allegations fail to satisfy the subjective component of an Eighth Amendment claim. There are no allegations - much less evidence - to show that any defendant knowingly delayed Plaintiff's treatment or failed to attend to any serious medical need.

#### a. Stalnaker and Eshum

The only allegations against Defendants Stalnaker and Eshum appear to be in a supervisory capacity, based upon their alleged failure to "make sure Plaintiff Frost Medical Care wasn't inappropriate," and "to let medical know [that] not putting Plaintiff Frost in the infirmary after his surgery was wrong." (Doc. 3 ¶ ¶ 10, 11). However, a supervisor cannot be held liable under 42 U.S.C. §1983 unless he or she directly participated in or encouraged the alleged violation of constitutional rights. *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994). Plaintiff's allegations against Defendants Stalnaker and Eshum do not satisfy this threshold.

#### b. Nurse Barr, Nurse Treadway, Dr. Bautista, and Dr. Owen

As previously stated, Plaintiff's chief complaint is that the two nurses failed to place him in the infirmary, and instead housed him in a "segregation" unit for observation during his post-surgical recovery period. Even if the nurses' actions violated institutional policy, the allegation against the medical staff fails to state a constitutional violation because there is no evidence that any staff were subjectively aware of any risk of harm to Plaintiff by failing to house him in the infirmary. Plaintiff's medical records belie any conclusory allegation that actual harm resulted; there is no evidence whatsoever to support Plaintiff's allegation that Defendants' choice of housing caused an infection.

Similarly, Plaintiff fails to allege, much less demonstrate, any subjective awareness by any defendant that a "cuff in front" order either would be disregarded or that the order was deliberately delayed. While there is some evidence that the "cuff in front" order was not requested until after Plaintiff had been cuffed behind his back, there is no evidence that any defendant would have understood it was unreasonable to fail to enter a "cuff in front" order at an earlier date. In fact, the evidence presented by Defendants supports the opposite conclusion: that Defendants immediately requested a "cuff in front" order as soon as Plaintiff brought the issue to their attention. Finally, there is no evidence that either of the two prescribing physicians should have known that weaning Plaintiff off of his pain medication was likely to cause him any harm. In short, Plaintiffs' own medical records refute any possibility of his allegations meeting the deliberate indifference standard.

### E. First and Fourth Amendment Claims

Although Plaintiff refers to alleged violations of his rights under the First and Fourth Amendments as well as the Eighth Amendment, the only allegations that Plaintiff makes against Defendants are those previously discussed. None of the allegations facially

implicate either the First or Fourth Amendments. To the extent that Plaintiff makes any claim under the First or Fourth Amendments, the claim would be no more than a restatement of his Eighth Amendment claim, and Defendants are entitled to summary judgment for the reasons previously stated.

### F. Motion To Amend

In addition to the pending motion of Defendants for summary judgment, Plaintiff has filed a motion to amend his complaint. Plaintiff was previously granted leave to amend his complaint on one occasion, in order to add an additional defendant, but failed to do so in the allotted time. (Doc. 28). The court subsequently denied Plaintiff's attempt to amend his complaint a second time, in order to add a payer for monetary damages in the amount of 5 million dollars, (Doc. 30). Relevant to Plaintiff's third motion to amend is the court's prior refusal to consider new and unrelated claims that Plaintiff has been subjected to physical abuse and harassment by various prison officials since the filing of this lawsuit. (Doc. 9). Substantially similar claims of retaliatory conduct by Defendants are alleged by Plaintiff in his present motion to amend.

Plaintiff's third attempt to amend his complaint should be denied for the precise reasons stated in the Report and Recommendation filed on October 21, 2009. (Doc. 9). In that R&R, the court held that the allegations of retaliatory conduct were insufficiently related to the original complaint. The court also held that Plaintiff had failed to administratively exhaust the new claims as required by the Prison Litigation Reform Act (PLRA) and therefore the claims would be subject to *sua sponte* dismissal.

In Plaintiff's current motion to amend, he disputes the court's prior conclusion that he failed to exhaust his administrative remedies. (Doc. 57). However, the court's prior R&R

14

was adopted as the opinion of the district court and is now the law of the case. In addition, because discovery has closed on the initial claims, and the Defendants are clearly entitled to summary judgment on all of those claims, amendment at this late stage of proceedings would unfairly prejudice the Defendants.

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED** that the defendants' motion for summary judgment (Doc. 53) be **GRANTED,** that plaintiff's motion to amend (Doc. 57) be **DENIED** and that this case be dismissed with prejudice from the active docket.

 /s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ROBERT FROST,            Case No.: 1:09-cv-662

    Plaintiff,             Dlott, J.
                        Bowman, M.J.
  v.

H.C.A. STALNAKER, et al.,

    Defendant

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

15

objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).